Leopard Industries, Inc. (formerly k/a Great Leopard Market Corp.), Appellant, *v.* Philip N. Toanone, Chester City Assessor, Appellee.

Argued June 5, 1973, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James L. Rankin,* with him *Rankin & Rankin,* for appellant.

*Philip A. McMunigal, Jr.,* Solicitor, for appellee.

OPINION BY JUDGE CRUMLISH, JR., October 9, 1973: Leopard Industries, Inc. (Leopard) filed an action in mandamus praying that the Court of Common Pleas

of Delaware County command the Chester City Tax Assessor to reduce Leopard's real estate assessment insofar as it is applied to school tax purposes.

The Complaint was dismissed, giving rise to this appeal.

A building in the City of Chester owned by Leopard was completely destroyed by fire on April 20, 1971, with all remnants thereof being removed so that only vacant ground remained. Leopard requested that the City Assessor reduce the assessed value of the property from its triennial valuation of $43,000 covering years 1969, 1970, 1971, to an assessment reflecting the loss of the building formerly situated on the land in question. Leopard also requested that this reduced valuation be effective July 1, 1971, the first day of the fiscal year of the Chester School District.[1] In denying Leopard's specific request, Leopard was advised that a reduced valuation would be accomplished at a later date, namely January 1, 1972.

Appellant argues that since The Third Class City Code, Act of June 23, 1931, P. L. 932, Article XXV, Section 2506, as amended, 53 P.S. §37506, gives an assessor the power to deduct from the value of property any loss occasioned by destruction or injury to that property, between triennial assessments, it is entitled to a reduction of its liability for a school district's real estate tax when the building situated on the taxable property was destroyed by fire prior to the fiscal year for which the tax was due.

We disagree and affirm the court below.

---

[1] Chester proper, a Third Class City, conducts its finances on a calendar year basis.

Chester School District is a school district of the second class which runs on a fiscal year beginning the first day of July in each year, pursuant to The Public School Code, Act of March 10, 1949, as amended, 24 P.S. §6671.

The Third Class City Code provides in pertinent part: "In the years between triennial assessments, the said assessor shall perform the following duties with the reference to the assessment of property and other matters and subjects of taxation, namely: He shall, (d) Deduct from the value of any property any loss caused by destruction, injury, or otherwise, howsoever; . . ." 53 P.S. §37506.

The year 1971 was a year "between triennial assessments." Under the cited section, the city assessor was obliged to reduce the assessment because of the destruction of the Appellant's building. This new assessment was in fact made by the assessor, and Appellant was notified that the new valuation would take effect January 1, 1972, the beginning of the following calendar year. Appellant argues, however, that since his building was destroyed on April 20, 1971, the reduced valuation should take effect July 1, 1971, the beginning of the school district's fiscal year. The importance of this distinction lies in the fact that the assessment made by the assessor is the yardstick for school taxes as well as city taxes.[2]

Both Appellant and Appellee cite as authority for their respective positions, *Louis G. Cohen v. City of Easton,* 43 Municipal Law Reporter 83 (1952). In that case, the Common Pleas Court of Northampton County held that the reduced assessment given property affected by demolition or other injury which occurs between the years of triennial assesments, a procedure set up by Section 2506 of The Third Class City Code,

---

[2] The Public School Code, Act of March 10, 1949, P. L. 30, Article VI §674, as amended, 24 P.S. §6-674 provides that: "In school districts of the second class, the school taxes shall be levied and assessed on the real estate and personal property therein, as contained in the assessment used for tax purposes in the city, . . . in which the school district is located.

does not apply to the particular year during which the demolition or injury occurred. The reduced valuation does not become effective until the next following date of assessment.

Appellant argues that since its real estate tax was not levied by the school district until after its building was destroyed, and such a levy took place for a new year, i.e., the school district's *fiscal year,* a reassessment should have been made by the city assessor and submitted to the school district for use as a guide in the calculation of Appellant's tax.

Appellee contends, however, that *Louis G. Cohen v. City of Easton,* 43 Municipal Law Reporter 83 (1952), clearly indicates that any reduced assessment for property reflecting a loss through demolition or destruction is not applicable until the *calendar year* following the destruction or demolition of said property.

Although *Louis G. Cohen v. City of Easton,* 43 Municipal Law Reporter 83 (1952) is somewhat instructive, we believe that the answer to the issue involved here is found in an examination of (1) the power of a school district vis-a-vis that of the city assessor, and (2) the statutorily mandated duties of the city assessor.

The Public School Code, Act of March 10, 1949, P. L. 30, as amended, 24 P.S. §6-675 provides that: "In order to enable the boards of school directors in school districts of the second class to assess the necessary school taxes required by such school district each year, the city clerk or proper official required by law to do so shall, annually, on or before the first day of April in each year, at the expense of the city, furnish to each school district of the second class for its use, to be retained by it, a properly certified duplicate of *the last adjusted valuation of real estate,* personal property, and a list of all residents or inhabitants made taxable in such school district of the second class, stating the

name of each taxable, the valuation, and the kind of property assessed. . . ." (Emphasis added.)[3]

It has been held that the power to determine or refuse exempted property status lies exclusively with the city assessor and not the school board, *Leech v. Harrisburg School District*, 79 Dauph. 186 (1963). We feel such reasoning equally applies to the assessment prescribed to properties within the school district. Therefore, since a school district possesses no power to reduce property assessments, we must turn to the Third Class County Code to determine if the City Assessor was required to reassess Appellant's property before July 1.

Section 2511 of The Third Class County Code provides as follows: "The assessor shall complete his triennial assessment, and the annual assessments in intervening years, *on or before the first day of September* in each year, or as soon after as practicable. . . ." (Emphasis added.) 53 P.S. §37511.

Therefore, the City Assessor of Chester had until approximately September 1, 1971, to reassess Appellant's property, and was under no obligation to reassess Appellant's property before its valuation was supplied to the Chester School District.

Since the City Assessor was not mandated by relevant statutes to alter Appellant's property valuation before July 1, 1971 and the Chester School District itself lacks the power to make that change, we hold that the Appellant's action in mandamus was properly dismissed by the court below.

---

[3] Had the valuation of real estate for all the inhabitants of Chester School District been provided said District by the proper city official on or before April 1, as provided by the statute, the lower court's reasoning, that the School Board required that particular valuation to fashion its upcoming budget, would be determinative here. However, in this case, the school district did not receive all the relevant assessments until May 10, 1971, some twenty days after the Appellant's building was destroyed.

ORDER

AND NOW, this 9th day of October, 1973, the Order of the Court of Common Pleas of Delaware County dated October 6 ,1972, is hereby affirmed.

Judge MERCER dissents.

---

CONCURRING OPINION BY JUDGE KRAMER :

Although I concur in the majority opinion, I feel compelled to add these additional thoughts. It is obvious from the record in this case, that the Leopard Industries, Inc. (Leopard) is attempting to absolve itself from paying real estate taxes to the Chester School District between July 1, 1971 and December 31, 1971. The majority correctly holds that the Chester City Tax Assessor, who is the only defendant in the case, properly refused to change the assessment on Leopard's building, which was completely destroyed by fire before the beginning of the school district's tax year, which commenced on July 1, 1971. The relevant statutes direct the tax assessor to complete his triennial assessment, and the annual assessments in intervening years, "on or before the first day of September in each year, or as soon thereafter as practicable." *See* Third Class City Code, Act of June 23, 1931, P. L. 932, §2511, as amended, 53 P.S. §37511. He is also directed to furnish to the school district on or before April 1 of each year "a properly certified duplicate of the *last adjusted valuation* of all real estate" taxable in the school district. (Emphasis added.) *See* Public School Code of 1949, Act of March 10, 1949, P. L. 30, §675, 24 P.S. §6-675.

The problem, however, is that Leopard has confused the verb "to assess" with the verb "to tax." The tax assessor has the statutory duty to make a "just valuation" of the property. *See* Section 2504 of the Third Class City Code, as amended, 53 P.S. §37504. The tax assessor for Chester City is also given the duty to make the assessment on Leopard's realty as an agent of the

school district. (The Public School Code of 1949, §675, 24 P.S. §6-675.) However, the tax assessor does not levy taxes; he merely evaluates the property. Only the school district can levy the school realty taxes in question. In other words, Leopard has either sued the wrong party, or brought the wrong action. The fact that property has been assessed for taxation does not necessarily mean that the property owner will pay taxes on that property; e.g., a public utility's realty is assessed, but it may not pay taxes if such property is exempt from taxation. *See Duquesne Light Company v. Board of Property Assessment, Appeals & Review of Allegheny County,* 10 Pa. Commonwealth Ct. 41, 299 A. 2d 660 (1973).

I am adding these thoughts because I am concerned that someone may attempt to use the majority opinion as support for the argument that a taxing authority may tax property which is nonexistent. As I understand the law of this Commonwealth, a taxing authority only has that power to tax as granted to it by the Constitution and the Legislature. *See* Article VIII, Section 1 of the Pennsylvania Constitution of 1968; and The Local Tax Enabling Act, Act of December 31, 1965, P. L. 1257 §2, as amended, 53 P.S. §6902. Furthermore, Section 674 of The Public School Code of 1949 (24 P.S. §6-674) provides: "In school districts of the second class, the school taxes shall be levied and assessed on the real estate and personal property *therein,* as contained in the assessment used for tax purposes in the city, borough, incorporated town or township in which the school district is located. . . ." (Emphasis added.) The Chester School District can tax only real estate *existing* in its school district during the tax year, or any part thereof. When the property assessed to be taxed is nonexistent at the beginning of the tax year and continues to be nonexistent for the duration of

the tax period, there is a tax liability void. A tax upon a void is zero. I can find no statutory authority for the proposition that the school district may levy a tax upon property which is nonexistent during the entire tax year. Tax liability is not determined by the practicalities of school budgets nor the economics of a school district utilizing the services of another taxing authority's assessor. Since the appellant's building was destroyed prior to the start of the school district's tax year, no tax should have to be paid by this taxpayer for the school tax year in question.

It is important to note that the issue of the appellant's tax liability is not before the Court in this case. The only issue which has been raised here is whether the tax assessor could be forced to reduce the tax assessment based upon the destruction of the building prior to the beginning of the school district's fiscal year. Thus, I agree with the majority opinion that by virtue of the relevant statutes the tax assessor could not be ordered to change the property assessment prior to the following September, which would become effective on January 1 thereafter (See Third Class City Code, 53 P.S. §37511). This holding, from my point of view, however, does not determine the question of tax liability.